UNITED STATES DISTRICT COURT

for the

District of Colorado

10th Judicial District

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
JAN 25 2021
JEFFREY P. COLWELL
CLERK

Case No. _____

RYAN VAN LUE   (*Pro Se*)

*Plaintiff,*

-V-                                    **JURY TRIAL DEMANDED**

EXECUTIVE DIRECTOR OF
THE C.D.O.C.,
DEAN WILLIAMS;
D.R.D.C. WARDEN, RYAN LONG;
CAPTAIN, T. CHRIST;
LIEUTENANT, C. WENCE

*Defendant(s).*

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. §1983**

## JURISDICTION AND VENUE

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. section 2201 and 2202, compensatory and punitive damages.

2. The United States District Court for the District of Colorado, 10th Judicial District, is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

## PRELIMINARY STATEMENT

3. The right of a prisoner to be safeguarded from known dangers in prison is one of the most important a prison official has the duty to bear. Failing to protect a prisoner from obvious harm does a grave disservice to society, as the entire point behind the incarceration of the prisoner is to correct and rehabilitate, not torture. The entire plan for a prisoner, particularly this prisoner, is for them to be reunited to the community and once again be able to live a safe, productive, and hopefully peaceful life on the outside. This cannot be accomplished if he does not receive the proper care due him while he is undergoing his correction and rehabilitative efforts. Although a prisoner may not be a member of the society at the time he is incarcerated, his thoughts, dreams, and hopes are. He will again, if the proper safeguards are taken, be rejoined to society. Were he to come out abused, battered, broken and in mental and emotional anguish because of what he has endured within the prison gates due to prison officials deliberate indifference, how will society

ever benefit? They will not benefit. They will suffer. They (society) will then have the duty and burden to care for this broken and distraught person, whom the system has failed, as happens to so many. Do we not owe them more than this? Do we not owe them what we would each wish for ourselves? What we all need? If the prison officials should fail in these duties, the courts have the distinctive privilege and right to restore to them as best as possible what has been lost, what has been forgotten, and that is this Petitioner's imploring hope in this case. To be seen and heard. To be restored.

## PARTIES

**PLAINTIFF**

4. Plaintiff, **Ryan Van Lue**, is and was at all times mentioned herein a prisoner of the State of Colorado in the custody of the Colorado Department of Corrections. He is currently on supervised parole release and resides at 8956 Grand Avenue, Beulah, CO 81023.

**DEFENDANT(S)**

5. Defendant No. 1, **Dean Williams** is the Executive Director of the Colorado Department of Corrections. He is legally responsible for the overall operating of the Department and each institution under its jurisdiction, including the Denver Reception and Diagnostic Center where Plaintiff was confined when the cause of action arose. Dean Williams resides at his place of work for service of process at: 1250 Academy Park Loop, Colorado Springs, CO 80910.

6. Defendant No. 2, **Ryan Long** is the Warden of the Denver Reception and Diagnostic Center. He is legally responsible for the operating of the Denver Reception and Diagnostic Center

and for the welfare of all the inmates in that prison, (hereinafter mentioned as "Warden Long"). Warden Long resides at his place of work for purposes of service of process at: 10900 Smith Rd, Denver, CO 80239

7.     Defendant No. 3, **T. Christ** is a Correctional Officer of the Colorado Department of Corrections who, at all times mentioned in this complaint, held the rank of 'Captain' and was assigned to the Denver Reception and Diagnostic Center, (Hereinafter mentioned as "Captain Christ"). Captain Christ resides at his place of work for purposes of service of process at: 10900 Smith Rd, Denver, CO 80239

8.     Defendant No. 4, **C. Wence** is a Correctional Officer of the Colorado Department of Corrections who, at all times mentioned in this complaint, held the rank of 'Lieutenant' and was assigned to the Denver Reception and Diagnostic Center, (hereinafter mentioned as "Lt. Wence"). Lt. Wence resides at his place of work for purposes of service of process at: 10900 Smith Rd, Denver, CO 80239

9.     Each defendant except for Dean Williams is hereby sued in their individual and official capacities. Dean Williams is sued in his official capacity only. At all times mentioned in this complaint each defendant acted under the color of state law.

## INTRODUCTION AND STATEMENT OF FACTS

10. Petitioner, Ryan Van Lue (hereinafter "Mr. Van Lue"), *appearing Pro Se*, respectfully submits this petition pursuant to 42 U.S.C. § 1983, challenging Defendant(s) acts and omissions which have subjected him to Cruel and Unusual Punishment in violation of the 8th Amendment to the United States Constitution, applicable to state actors acting under color of state law.

11. From approximately January 18, 2019 to February 18, 2019 Mr. Van Lue was wantonly and maliciously subjected to an unsafe environment while in the Denver Reception and Diagnostic Center (DRDC) close-custody transfer unit 3B, and, after Mr. Van Lue informed the above-named prison officials (Defendants 2-4) of this danger to his safety, namely, that he was currently being extorted by "211's" (Gang members) and that his life was in danger, they ignored his pleas. He continued to be extorted, had items stolen from him, endured mental and emotional distress, and on February 18, 2019 was assaulted and incurred personal injury and damage to his property (glasses) and was stolen from because of the prison official's failure to act to protect Mr. Van Lue from this threat.

12. The officials were informed by Mr. Van Lue, his Mother and Grandmother that he was in danger, currently being extorted by gang members, and that his life was in serious jeopardy. The officials placated Mr. Van Lue by stating that they would "see about" moving him to a lower custody level so that he could be safe, (as he was overrode previously to medium-custody because of these kinds of issues due to inmates targeting him because of his sex offense, prior to him being sent back to prison on a parole revocation). This never happened, nor were any other actions taken to protect Mr. Van Lue. He was never again contacted by the prison officials until after he was extorted further, stolen from, and assaulted, resulting in redness and swelling to the periorbital area on the left side of his face, as well as broken glasses. In addition, there were several days in which Mr. Van Lue never left his cell because he was afraid of what might be done to him by other

inmates, depriving him of meals for several days and the ability to have recreation due to his fear of danger from other inmates.

13. Mr. Van Lue originally sent a kite to Warden Long to request that he be moved to a lower custody level because he was not safe where he was. Warden Long assigned Lt. Wence to come talk to Mr. Van Lue about the kite. Mr. Van Lue informed Lt. Wence that he was currently being extorted by 211's and that he was in jeopardy of being harmed and needed to be moved to a lower custody level to be safe, as he was prior to being sent back to prison. Lt. Wence told Mr. Van Lue that he should continue to pay extortion and that he would "see about" getting him transferred to lower custody. Mr. Van Lue did as he had said under duress.

14. Both Mr. Van Lue's Mother, Grandmother and Step-father attempted to contact an official at DRDC many times, with his Mother calling between 15-20 times and then having the phone picked up but not answered by a DRDC employee, where she could hearing them talking about their weekend plans in the background. Mr. Van Lue's Grandmother and Stepfather had the same kind of issues trying to get ahold of someone at DRDC. Mr. Van Lue's Grandmother finally was able to get someone to answer the phone and take the call, where she informed them that her Grandson (Mr. Van Lue) was in danger and being extorted. They told her that they would send someone to check in on him. Based upon this call, Warden Long then sent Captain Christ to speak with Mr. Van Lue. Mr. Van Lue explained the same things to Captain Christ, and that the situation was becoming extremely dangerous. Captain Christ told Mr. Van Lue the very same thing that Lt. Wence had, that he should continue to pay extortion, that neither he nor the other inmate would be sent to the hole (restrictive housing), and that they would "see about" getting him transferred to a lower custody level. Neither of these officials contacted Mr. Van Lue again at any point. Meanwhile, Mr. Van Lue had sent 2 letters to Offender Services, which is the division at the

Colorado Department of Corrections headquarters in charge of offender placements. One of these letters Mr. Van Lue maintained a copy of which describes why he needs to be transferred to lower custody, and that he was not safe where he was. *See Letter to Offender Services,* attached as Exhibit A.

15. After a few days of hearing nothing back from any official regarding what was going to be done to keep Mr. Van Lue safe. Sometime between February 1, 2019 through February 18, 2019 Mr. Van Lue's Mother filed a complaint on the Colorado Department of Corrections website regarding his safety, and upon information and belief stated that she had attempted to call D.R.D.C. and that Mr. Van Lue's Grandmother had called and gotten through about Mr. Van Lue's safety and that it was not being handled and the conditions remained the same and her son was still in danger. Upon information and belief this complaint was generally answered, saying that it would be taken care of. It never was.

16. A few days after Mr. Van Lue's Mother had received the answer back on her complaint, Mr. Van Lue's cell door was knocked on by another inmate who had a large "B" tattooed on the left side of his face and appeared to be Hispanic, requesting him to meet him at the shower. Mr. Van Lue stepped out of his room and went to the shower area on the second tier of Pod 3B. The inmate said to Mr. Van Lue, "Yesterday, when you got kites from me, I didn't realize that you were a piece of shit". Mr. Van Lue asked what he meant. He responded, "You have a sex case, so you are a piece of shit". Mr. Van Lue tried to deescalate the conflict with the inmate verbally, but he would not reason with him. He was then told by the other inmate not to go anywhere. Mr. Van Lue went to secure his cell door, expecting the issue to escalate, and upon stepping inside briefly, realized that several items had already been taken from his room while he went to talk to the inmate at the shower. Mr. Van Lue secured the door, went downstairs, and addressed the 211 leader who

was extorting him, who had told him to come to him if he had problems with anyone. Mr. Van Lue told the inmate that he needed to talk with him immediately. He replied that he would be there in a minute, as he was playing poker. Meanwhile, the other inmate with a "B" on his face had finished his shower and came downstairs. Mr. Van Lue told him that he would have to talk with the 211 inmate before they talked any further. He responded, "Now I have to talk with him!? I am going to get something out of you regardless".

17. At this point Mr. Van Lue knew that he was in grave danger, so he went to the slider (pod door) to attempt to exit the pod and to go report to the officers that he needed to be taken to segregation immediately, as his life was in jeopardy. While waiting at the slider for the officer to respond on the intercom, another Hispanic, short-statured inmate with a cast on his leg called to Mr. Van Lue from the other side of the pod, for him to come near. Frightened and not knowing what to do, Mr. Van Lue approached the inmate who led him over to the shower area on the first tier. The inmate then held up his closed fists in an aggressive stance and demanded that Mr. Van Lue give him his glasses. Mr. Van Lue backed away as the other inmate was advancing and told him he could not do that, because it was all that he had to see with. The inmate continued to advance with closed fists exclaiming "give me your glasses, homie!". Mr. Van Lue told the inmate to go away 4-5 times, then, afraid that the inmate was going to strike him, Mr. Van Lue shoved the inmate roughly to the side, which, losing his balance, fell backwards against the poker table. Mr. Van Lue then bolted for the door fearing that others would pursue him, signaling the officers in the open-windowed tower with his hands to open the door to the pod.

18. As Mr. Van Lue was waiting for the door to open to exit the pod, the inmate with the "B" on his face approached screaming at Mr. Van Lue, and then ran up and struck him with his closed right fist on the left side of his face, knocking his glasses off and causing one of the lenses to fly

out. Mr. Van Lue and the other inmate struggled for the glasses, Mr. Van Lue managing to grab them and slip out of the door as it was opening, then it closed behind him.

19.  Mr. Van Lue quickly went to the office and informed the officers that he had just been assaulted. They secured him in handcuffs and led him to a locked room in the middle of the pods. Then, Lt. Wence came in the room and asked Mr. Van Lue why he had not informed him what had been going on. Mr. Van Lue explained to him that he had done that before. In fact, he had not only sent the kite to the Warden's office and explained the situation in-depth with him (Lt. Wence), but he had already written two letters to Offender Services about the situation, explained everything that was happening to his family over the *recorded* phones, had his Mother call the Warden's office about the concern for his safety, talked with Captain Christ about his problems, that his mother filed a complaint on the CDOC website because of no action being taken to protect him, and that even his Stepfather had called the Denver Police Department to try to get ahold of someone at the prison who could help to protect him. All these attempts had been made to let someone know about the danger he was in, to no avail. Lt. Wence then got markedly red in the face and began to take a picture of Mr. Van Lue's twisted glasses for the disciplinary hearing of the inmate who had struck him. Meanwhile, another officer went back to retrieve the lens that had been broken from the glasses.

20.  Afterwards, Mr. Van Lue asked Lt. Wence if there was any way he could help get him transferred back to Fremont Correctional Facility, where he had been prior to release before his parole was revoked. Lt. Wence explained how he had no control in these matters, and that he was deeply sorry. Mr. Van Lue was then escorted to restrictive housing (Removal From Population) where shortly thereafter, a medical staff member came to examine his injuries. Finding that there was redness and swelling to the periorbital area on the left side of Mr. Van Lue's face. He was

then given some Ibuprofen for the pain and swelling. *See Colorado Department of Correction Clinical Services Anatomical Form* and related *Condensed Health Services Encounter* report, attached as Exhibits B and B1.

21.     Remarkably, just two days later, Mr. Van Lue was moved out of DRDC and transferred to the Fremont Correctional Facility where he had hoped. He shortly began SOTMP (Sex Offender Treatment and Monitoring Program) classes and has now been re-paroled. After being in treatment for some time, Mr. Van Lue became aware that Lt. Wence had placed a "Chron. Report" (Chronological Report) in the system. This Chron. stated exactly the opposite from what Mr. Van Lue had informed him about his being in danger in this situation, and his Mother's complaint filed on the CDOC website. No other official, including Warden Long or Captain Christ filed any incident or Chron. or incident reports regarding Mr. Van Lue's safety concerns, or his Mother's complaint filed on his behalf. This complaint follows.

## EXHUASTION OF ADMINISTRATIVE REMEDIES

Mr. Van Lue attempted to obtain grievance forms while he was undergoing his distress but was unable to obtain them. Especially considering that the inmate who assaulted him was the primary person who was assigned by the prison officials to pass out these types of forms during his 1 hour a day out of his cell. Given that Mr. Van Lue was assaulted and has now been released, the Prisoner Litigation Reform Act does not pertain to him regarding the exhaustion of administrative remedies.

## COUNT I

**Right to Be Free from Cruel and Unusual Punishment**

**42 U.S.C. §1983 – 8th Amendment of the Unites States Constitution.**

22.     Defendant(s) were deliberately indifferent to Mr. Van Lue's serious safety concerns and the unsafe environment, and violated Mr. Van Lue's Eighth Amendment right to be free from Cruel and Unusual Punishment. Defendant(s) committed this violation against Mr. Van Lue by failing to take any action, or reasonable action to prevent Mr. Van Lue from being extorted and assaulted by other inmates after having been informed multiple times about the substantial risk of harm to Mr. Van Lue. This failure resulted in Mr. Van Lue sustaining physical injury to the periorbital area on the left side of his face, damage to personal property (glasses), missing meals, constructive denial of recreation and mental and emotional distress. *See Farmer v. Brennan*, 511 U.S. 825 (1994) and *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991) (Generally).

23.     Defendant(s) were all acting under color of state law at the time the violations occurred and recklessly and negligently disregarded Mr. Van Lue's safety.

24      Defendant(s) owed Mr. Van Lue a duty of care to protect him from known dangers while residing at the Denver Reception and Diagnostic Center, particularly in light of the fact that Mr. Van Lue was residing in a close-custody (high-custody) unit and has an extensive history of custody and safety issues while residing in close-custody facilities because of his crime, which Defendant(s) were aware of.

25. Defendant(s) subjected Mr. Van Lue to dangerous conditions which went beyond the sentence prescribed by the sentencing court.

## RELIEF REQUESTED

WHEREFORE, Mr. Van Lue prays for judgment as follows:

A. Declaratory Judgment against all named Defendants that the acts and omissions described herein violated Mr. Van Lue's rights under the Constitution and laws of the United States;

B. Compensatory damages in the amount of **$50,000** against Defendants Ryan Long, Lt. Wence and Captain Christ, jointly and severally;

C. Punitive damages in the amount of **$50,000** each against Warden Ryan Long, Lt. Wence and Captain Christ in their individual capacities for deliberate indifference and negligence;

D. Filing fees and costs;

E. Such other relief as the Court deems just, proper and equitable.

## JURY TRIAL DEMADED

Mr. Van Lue hereby demands a trial by jury on all counts so triable, and any allowed amended counts so triable.

(INTENTIONALLY LEFT BLANK)

Respectfully submitted on this  18th  day of January 2021:

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true and correct.

Ryan Van Lue – Petitioner

8956 Grand Avenue

Beulah, CO 81023

(719) 470-9803

ryandvanlue@gmail.com

COPY

**TO:** Offender Services  
    CDOC HQ  
    1250 Academy Park Loop  
    Colorado Springs, CO

01/24/19

**FROM:** Ryan Van Lue #164267  
    DRDC - 10900 Smith Rd.  
    P.O. Box 392004  
    Denver, CO 80239-8004

**RE:** Custody Classification / override review request.

Dear Offender Services Director, et. al.;

I am writing to request consideration in overriding my Custody level to "medium", and to be sent to Fremont facility to attend the Advanced Risk Management group (ARMs); Currently I am listed as 'close-custody' at 18 points. I have recently been regressed while on parole for my poor choice to send pictures to another inmate, of which, I should have realized would have been deemed ~~inappropriate~~ inappropriate given my charges. Unfortunately I did not take into account the potential consequences of my actions. I do take full responsibility for my actions, and I only desire to progress in my treatment needs. I am a convicted Sex offender, and prior to parole release I did complete the SOTMP [Track-1] program at Fremont.

1

I am requesting to be overrode from DRDC to attend the (ARMs) group there, designed for S.O. parole violators, so that I can be surrounded by a treatment community (6-upper) where I can address my risk-factors, with support that lead to my recent poor decision on parole, and so I can be safe.

In further consideration of allowing me this opportunity, if you would review my CTAP/history while incarcerated, you will find that I received a Security Override once before, from '31' points, and that upon this being granted, I received no COPD reports/chrons whatsoever, during my stay, and I completed multiple programs successfully, including S.O. treatment, while managing my behaviors, and my custody issues ceased from that point until my release.

The major reason for this change, then, was because I was finally safe, and it allowed me a(n) environment where I could make positive changes, and rely on similarly situated offenders for support during this time. Although I did make remarkable progress then, I am very regretful for my most recent poor choices; I lost sight of my own goals and success by trying to 'hold on' to what I left behind, and help my friends, I was foolish for this. I should have focused on my success on parole.

I am very scared to be sent to any closed-custody facility, and you can see I have had custody issues everywhere I have went except Fremont and "CMRC"; prior to release

22

I was almost placed in 'protective custody' before I was initially overrode to Fremont, medium-custody, and I do not want that because then I would not be able to progress.

If you/the committee deem that an override is warranted, but not to Fremont, I would be happy to go to CMRC, or AVCF, or even Territorial, in their respective S.O. program communities. But to my knowledge Fremont is the only facility with the specialized (ARMS) group for parole violators.

I do understand my position, and the consequences of my poor choices, and that I am in no way entitled to any benefit; However, I can only plead with you/the committee to allow me the opportunity to continue my treatment, and be in a safe environment. I am asking for the chance to remedy my recent poor decision, as I have shown I can do, and to continue in learning, and in focusing on 'my' case to successfully progress in prison, and hopefully to parole release again.

If you allow me this opportunity, I can assure it would be prudent to both my, and institutional safety concerns, and I would not pose any security concerns in medium-custody, I simply desire to progress in life, and go home.

Thank you for your time and consideration in this matter.

Respectfully,
Ryan Van Lul #167207

3

Ex. B

Sec. 2. Anatomical

# COLORADO DEPARTMENT OF CORRECTIONS
## CLINICAL SERVICES
## ANATOMICAL FORM




**LIST INJURIES:**
Circle area above and number according to description.

1. Redness to lyt cheek and eyebrow
2. 
3. 
4. 
5. 
6. 

**COMMENTS:** _____

Health Provider Name: [signature]

Date: 2-18-19   Time: 1056

Facility: DRDC   Living Unit: 2A

Patient's Name: Van Hue

DOC Number: 154267

| | |
|---|---|
| COLORADO<br>Department of Corrections | VANLUE, RYAN  PID#:10062580 DOC#:164267   Page 1 of 1 |
| CHSS027J  Ex. B1 | Condensed Health Services Encounter   04/05/2019 01:59:44 PM |

---

**DOC #:** 164267   **Inmate Name:** VANLUE, RYAN

**ENCOUNTER DATE:** 02/18/2019   **TIME:** 10:47:18   **DURATION:** minutes   **TYPE:** Anatomical - Nursing

**LOCATION:** DENVER RECEPTION AND DIAGNOSTIC CENTER [DRDC]   **SETTING:** Health Services Clinic

---

**S**   **NOTES:** Anatomical completed per request from Security

1. redness to left cheek and left periorbital area

---

**O**   **SCANNED DOCUMENT/PHOTO TYPE:** Medical Records   **TITLE:** Anatomical

**NOTES:**
Rednes noted to left cheek and left priorbital area

---

**A**   **NOTES:**

**STANDARD FORM:**   Pre-Restrictive Housing Clinical Assessment

---

**P**   **NOTES:**

---

**E**   **NOTES:**

---

**Health Scores:**   **M:** 2(P)   **D:** 3   **P:** 2   **S:** 5(R)   **SA:** 4

---

**REVIEW NOTES:**
TimeStamp: 20 February 2019 16:12:18 --- User: KaseyGrohe (29837)

---

**STAFF:** NAMONGO, JOSEPH N   Nursing Supervisor

**NURSE SIGNATURE:** _____

Ex. B

Sec. 2. Anatomical

# COLORADO DEPARTMENT OF CORRECTIONS
## CLINICAL SERVICES
## ANATOMICAL FORM



**LIST INJURIES:**
Circle area above and number according to description.

1. Redness to lyt cheek and eyebrow
2. ___
3. ___
4. ___
5. ___
6. ___

**COMMENTS:** ___

Health Provider Name: [signature]
Date: 2-18-19      Time: 1056
Facility: DRDC    Living Unit: 3A

Patient's Name: [signature]
DOC Number: 164267

| COLORADO Department of Corrections | VANLUE, RYAN   PID#:10062580   DOC#:164267 | Page 1 of 1 |
|---|---|---|
| CHSS027J   Ex. B1 | **Condensed Health Services Encounter** | 04/05/2019 01:59:44 PM |

**DOC #:** 164267   **Inmate Name:** VANLUE, RYAN

**ENCOUNTER DATE:** 02/18/2019   **TIME:** 10:47:18   **DURATION:** minutes   **TYPE:** Anatomical - Nursing

**LOCATION:** DENVER RECEPTION AND DIAGNOSTIC CENTER [DRDC]   **SETTING:** Health Services Clinic

**S**   **NOTES:** Anatomical completed per request from Security

1. redness to left cheek and left periorbital area

**O**   **SCANNED DOCUMENT/PHOTO TYPE:** Medical Records   **TITLE:** Anatomical

**NOTES:**
Rednes noted to left cheek and left priorbital area

**A**   **NOTES:**

**STANDARD FORM:**   Pre-Restrictive Housing Clinical Assessment

**P**   **NOTES:**

**E**   **NOTES:**

**Health Scores:**   M: 2(P)   D: 3   P: 2   S: 5(R)   SA: 4

**REVIEW NOTES:**
TimeStamp: 20 February 2019 16:12:18 --- User: KaseyGrohe (29837)

**STAFF:** NAMONGO, JOSEPH N   Nursing Supervisor

**NURSE SIGNATURE:** _____